Our final case this morning is Heard v. Dulayev, number 19-1461. Ms. Lewis, you may proceed. It please the court. It is reasonable under the Fourth Amendment for a police officer to make a split-second decision to use a taser to subdue an assault suspect who is advancing on the officer while saying no to the officer's clear directions to stop and after the officer had given a verbal warning. These are the circumstances in this case, and the District Court erred when it found that under these circumstances, Officer Greg Dulayev violated the Fourth Amendment rights of Mr. Heard. The District Court further erred when it found that precedent existing as of the date of the incident made the unlawfulness of the conduct so clear that the law was clearly established, yet at the same time, the lawfulness of the conduct was a close call. In the court's findings, the court found that Mr. Heard collapsed to his knees in pain. Officer Dulayev then jumped on Mr. Heard and aggressively shoved his face into the dirt. Mr. Heard was disabled on the ground from having been tased while placing Mr. Heard in handcuffs. Officer Dulayev and another officer repeatedly and falsely accused Mr. Heard of resisting even though Mr. Heard was disabled on the ground. Don't we have to take those facts as found for purposes of assessing whether this was objectively reasonable under the Fourth Amendment? No, Your Honor, and there's two reasons for that. Number one, the District Court in the summary judgment order did not specify what factual findings it was determining a reasonable jury could find, but instead retroactively incorporated by reference its findings on a motion to dismiss. Those findings in the motion to dismiss order that you're referring to actually come from the allegations of the complaint, the untested allegations of the complaint, and they are blatantly contradicted by the video, specifically the video of Officer Adrian Enriquez, which shows that Officer Enriquez was the officer who had his hand on Mr. Heard's head, so to the extent that the District Court found that Officer Dulayev was shoving Mr. Heard's head into the dirt, that is blatantly contradicted by the video, which this court could then refute Now, this appeal involves qualified immunity, so there's two prongs to the analysis. As I just said, the court didn't undertake the essential task of identifying what the facts could be so the court can review the video of DeNovo, and the video shows that Officer Dulayev ordered Mr. Heard to crawl out from a shrub on his hands and knees. Mr. Heard was a Officer Dulayev warned Mr. Heard that he would be tased. Once Mr. Heard started walking towards the officer, he told him, stop, stop right there, and Mr. Heard, importantly, said no. Officer Dulayev was backing away from Mr. Heard at this time, trying to create distance between the two, and Mr. Heard closed the distance between himself and the officer within a matter of two minutes. But finding it was not reasonable for the officer to use the taser to protect himself under these circumstances, the district court is essentially saying that officers must wait until the suspect is physically upon them to use force. What about after he fell to the ground, when you watched the video? I mean, he is on his knees at that point. Can we look at that separately? In terms of the decision to take him to the ground further from his knees? And, you know, I guess, I'm not, the court incorporated by reference its findings from the motion to desist from this stage into its summary judgment ruling, I guess, being that it heard or considered in summary judgment changed its view of the facts. But the court, at least, viewed that as very aggressive and unnecessary, what happened after he fell to his knees. Are we free to reevaluate that? Yes, because I think the video shows that when he goes to his knees, it's all quickly happening in moment. And a taser works by immobilizing a person for a very short time period. So an officer only has a few milliseconds to control the suspect and make sure they're under control and to get them under control. So, yes, that was not excessive. An officer's not required to... Well, I'm not, counsel, I'm not sure I understood completely the answer you just gave. It seems like Mr. Hurd is alleging excessive force for the tasing on the one hand, but also what happened after the tasing, especially the forcing his face into the ground. And I understand your argument that that was the other officer. But the parties in the briefing to us seem to focus on the tasing. So can you tell us, is there one excessive force issue before this court? Are there two? Did the district court address both of them? Should we? How do we analyze those two things? There are two issues that are alleged in the complaints. Now, it's not clear from the summary judgment order whether the district court was still looking at what happened on the ground or not. But by virtue of referring back to its motion to dismiss, it's referring to the allegations of the complaints about what happened. And so that is, you could say, I mean, it is part of the same incident, the same continuum of events. So I don't know that you can parse them out in terms of the initial takedown to the ground. Certainly, you know, what happened is, say, like a minute later, you could separate out that. But after that point, Mr. Heard was already subdued. And the point where he was being any sort of patrol of his head, which is what he complains about in the complaint, and also in this case, is that that force was too much, was that, that is contradicted by the video, which shows us the other officer doing that. The video also does not show that he was compliant at that point. As far as prong two of the qualified immunity analysis, the court in the summary judgment order didn't identify the cases that it relied upon to find the law clearly established. However, to extend it, it incorporated by reference its prior order on the motion to dismiss, the cases cited there don't establish, clearly establish the law. Those cases were Morris versus Noe, Kavanaugh, and Casey. And as we discussed in our briefs, Morris does not involve the use of taser, which we do believe is an important distinction in this case. And the other cases, Kavanaugh and Casey, which did involve the use of taser, are very factually different from the circumstances in this case. There was no advance warning in either of those cases of taser, and here there was an advance warning. In those cases, the suspects were not suspected of criminal activity, and here they're both, Mr. Hurd was suspected of a felony assault. In both cases, other cases, the suspects had their back to the officers where the taser was deployed, and here, importantly, Mr. Hurd was advancing and had said no. Now, this precedent does not make clear to every reasonable officer that it would be a Fourth Amendment violation to deploy a taser on an advancing assault suspect. So, I will reserve the remaining time. Could I just ask one other question about clearly established? If we agree with you that the law was not clearly established, is there any reason for us to address the first prong of qualified immunity, that is, whether there was a constitutional violation? Could we just decide this on the clearly established prong? Well, the court can decide, obviously, on either prong. However, it is important in this case to resolve it on the first prong because the Fourth Amendment violation also goes to the claim against the city and county of Denver, and if the claim is resolved on that, the issue of the Fourth Amendment violation is resolved, then that claim would be resolved as well. Thank you. Ms. Grossman? Good morning. May it please the court, my name is Erica Grossman. I represent Greg Hurd. This entire appeal amounts to an improper challenge to the district court's factual findings, which flaunts the jurisdictional limitations set out by the Supreme Court in Johnson and should be dismissed. Did the district court make factual findings? Yes, Your Honor, the court made extensive findings. The defendants moved to dismiss the claim based on QI, qualified immunity, and submitted the video evidence as dispositive. The court rejected that, looked at the video evidence, which captured a portion of the tasing, and then said that, based on what he saw in the video and a reasonable interpretation in plaintiff's favor, that there would be no QI because there would be a constitutional violation. He also noted that video rarely captures everything, and then in a summary judgment motion, the defendants again said video could only be seen one way, video can't be subject to any different interpretation, and therefore we win again. Court said, no, I've already talked about that video, it could be seen both ways, and viewing the light most favorable to plaintiff, which he had to do, and looking at the evidence before him additionally on summary judgment, in which he said, he looked at the evidence before him, the response to reply, and then the same video evidence, and again denied qualified immunity based on the same cases, and noted that the video was not dispositive. We had another, which is on the record below, with defendants moved to stay, and in his order granting the stay pending this appeal, Judge Blackburn rejected defendant's request to stay, and said he didn't make the required findings, making a very long paragraph about all the findings he made, showing the three to four pages of his factual findings about the video, and then said, therefore he finds the exception where he didn't make findings to Johnson inappropriate, and part of those findings was that Heard did not appear to be aggressive, he showed the officer his empty hands while asking permission to come out, he began to crawl out in his hands and knees when told to crawl out from behind the bushes, he then, he wasn't rushing or advancing on the officer, he was, he was a tree to pull up from a standing position, his hands were by his side, and Judge Blackburn said in a non-threatening manner, that his facial expression was non-threatening, and he said, and importantly here, that he was not rapidly advancing, and the words he used, or running or rushing, like rapidly advancing at the officer, he wasn't saying no to commands, but instead, under plaintiff's reasonable interpretation, he was saying, no, no, no, listen, begging not to be tased, and saying, don't tase me, man, after Officer Jelayev had just said on video, I'll quote, I'll fucking tase you, and, and also finding that, counsel, could I just bring you back to the jurisdictional point you were making initially, why wouldn't we have jurisdiction to review whether a jury could find a constitutional violation based on drawing all factual inferences in favor of your client, Mr. Hurd, wouldn't we have jurisdiction to do that? I think you would have jurisdiction to accept the findings of Judge Blackburn, which that he, and, and not defend it, so not that he was saying no to commands or rapidly advancing, as they do, which does not accept his findings, but on the findings of what he said, which is that is, is it clearly established that a suspect like Mr. Hurd could not be tased and thrown violently to the ground and sat on, given that he was not armed, was not reaching for a weapon, was not fleeing, made no verbal or physical threats, was trying to comply, was not given time to comply with multiple conflicting commands in a span of seconds, and did not resist or try to escape. And I think if you accept those facts as true, which is both the facts found by Judge Blackburn on the, on the record before him, before summary judgment, in addition, I should add, and the facts, the uncontroverted facts that was, that was on the record, which is that Officer Goliath lied about the conversation that wasn't captured on video and pretended, and said the number one reason he tased Mr. Hurd was because Mr. Hurd verbally threatened him by saying, I'm going to fuck you up, which has been shown now when we enhance the audio and video, which was before Judge Blackburn, to be completely false. And if you look at all of those facts and evaluate those under what's clearly established in the totality of the circumstances under Graham, yes, I would concede that you would have jurisdiction to review that. So I'm now, I'm confused. So you're saying we have jurisdiction to review the video de novo and make our own determination of whether a reasonable jury could conclude that there was a violation of constitutional rights? Your Honor, I'm definitely not saying that. So let me, let me be clear in my answer, which is that you can only, you can only overturn these factual findings if they're blatantly contradicted by video. And that blatant contradiction is this court, I'm sure you're familiar with, has said it's not just if you disagree or if you would have done differently if you were the trial judge, but in Lynch v. Barrett, it has to amount to visible fiction. Visible fiction. And, and under this visible fiction standard, it'd be hard pressed to say that Judge Blackburn, plaintiff's renowned expert, Ken Katsaris, which ironically normally testifies for defendants in these cases, are all engaging in there was excessive taser when he's trying to comply, saying, come out, come out, don't shoot me, showing empty hands, not doing anything threatening and not resisting. I think it'd be hard pressed to say that that would be visible fiction. Oh, and these findings are not blatantly contradicted. They're well supported in the record. And we are now four years into a factual dispute that should be left to a jury. The law in this case, and I believe Lewis said that it was, I don't know if he said this, but Judge Blackburn said it was a close call. What he really actually said in a minute or in order was that the law is clearly established and was closely analogous. So he's, the cases that he cited, he referred to as closely analogous, and they are closely in the circuit knows that you can't hit, haze, throw to the ground, and further abuse a non-threatening and surrendering suspect. And I guess I wanted to address the comment about whose hand was pushing Mr. Hurd's face into the ground and two points about that. And if I have to try to cabin offices, it's pretty, there's one use of force, but nothing about our claim hinges upon whose hand pushed Hurd's face further into the ground. As Judge Blackburn said, it was excessive to be hazed and then to jump on him when he's clearly incapacitated from a taser and unable to do anything or move, throw him to the ground and tackle him and sit on him for minutes while he's saying he can't breathe. And whose hand is not, doesn't really matter there. And as, you know, as the Booker v. Gomez versus Gomez decision reiterates, we don't cabin off forces, use of force like that. A police officer may be responsible for another officer's use of force. If he actively participated in the use of force collectively and clear, when Officer Delia did, he was, he instigated that use of force. What's your best case that it's clearly established that you can't use a taser when someone is coming at the officer and not stopping when they're ordered to stop? So I would say that that does possibly give the reasonable interpretation favorable to defendants because Judge Blackburn concluded that he wasn't coming at the officer, but rather trying to comply with the commands to come out from behind the bushes. And naturally to do that, you need to come out from behind the bushes. And if you ask me the best case that I like, I like a lot, I like Kavanaugh v. Wood, cross. I like Morris v. Noe. One of the reasons I like Morris v. Noe and defendants take issue with that case because it doesn't involve a taser, but it involved a less use of force. It involved a tackle in the throat of the ground on a person who was actually also where the first factor, the first severity of the crime was potentially violent and weighed in favor of defendants. And in there, they said a reasonable officer would not need a prior case law on point to recognize it is unconstitutional to tackle a person who presents no indications of dangerousness. And if you can't do that to, if you can't use a lesser amount of force, if we're sure, surely similar facts involving a substantial use of force, which a taser unquestionably is, can't be used. And whether or not he, what Judge Blackburn found, and which we must be given the credit, is that he didn't have time to fully stop. I mean, stop right there, stop right there. And you're walking mid-step. You need, let's try to do it. You need a second to stop. And whether or not he's rapidly advancing or rushing aggressively as defendants claim, that's their interpretation that was rejected by the court because the court found him to be not threatening, not running at them, not advancing, but attempting to comply with the commands to come out from behind the bushes and not given a warning. Like in, I think the recent case that we just supplemented, Emmett v. Armstrong, it was decided later, it was decided earlier this month in terms of the clearly established problem that was addressed in conduct in 2013. So that was before what was happening here, where it says, the purpose of warnings are to exact compliance. And you can't simply give a warning, I'm going to tase you and then tase you if you don't give a person enough time to comply, enough time to say, oh, I understand you want me to stop right now. And Judge Blackburn found that he was given, he wasn't given that time to comply. He was given multiple conflicting commands within a span of seconds, just like in Emmett v. Armstrong and just like in Levy-Tucker. And I think, you know, Casey v. City of Havana Heights, Booker v. Gomez and Emmett v. Armstrong all reiterate the principle that it is excessive to use a taser, that substantial amount of force to control a target without having any reason to believe that a lesser amount of force or a verbal command could not exact compliance. And that principle also applies here. And I will, oh, sorry, I will, I wanted to address this wait and see. The idea that there's a wait and see standard, again, accepts defendant's version of the facts, that he's, that Officer DuLive is required to be tackled and assaulted. That's not the requirement, but if Heard was rapidly advancing and rushing and threatening him, I would concede it. But those aren't, those are their facts that they keep relitigating that have been rejected multiple times by the, by Judge Blackburn. And it's not a wait and see, you know, when he has other officers seen because Heard's not doing anything that he has to wait and see. He's coming out from behind the bushes as he'd ordered him to do. He was never threatening him. Officer DuLive has been caught in a lie saying that Heard threatened him, saying to his superiors and his sergeants that, that was the number one reason he was tased. When at depositions, all of those people said, that never happened. When you enhance the audio as we did, that never happened. And really what you can hear, he never said any verbal threats. He said, can I come out? Can I come out? Don't shoot me. Don't tase me, man. And that, that's part of the totality that you're looking at when, when, when Judge Blackburn decided that he wasn't engaging in a wait and see, he was engaging in tasing a non-threatening, surrendering, peaceful suspect. And if you look at the case's defendant site, that it requires, not surprisingly, it requires accepting their version. So they cite the Hinton versus city of Ellwood and Wilson versus city of Lafayette. And Judge Blackburn looked at those cases too and rejected them for the, what did he say? He said, with Hinton, he said, unlike Hinton, her did not refuse to speak to police, did not shove an officer and did not actively resist arrest. So he knows, and in that case, plaintiff was kicking and biting them. So he distinguished them as not at all relevant. And then Wilson versus city of Lafayette, which is an unpublished case, Judge Blackburn distinguished Wilson as quote, differing substantially because the suspect in Wilson was fleeing from police, refused to obey several orders to stop, and refused to say, obey several orders to keep his hand away from his pocket, and then reached into his pocket just before being tased. Those cases are markedly different. In order to apply those cases, you need to accept defendant's facts. Defendants misstate their holdings and relitigate these factual findings to get this court to overturn a well-supported summary judgment order. Now they, I've seen cases in which this court reviews and says that there were no factual findings. I know that they did that in Booker v. Gomez. I pulled them in order. It didn't seem like there was even any order written. And in here, you have a 20-page order about facts, a seven-page summary judgment order about facts, and then a nine-page order containing two or three pages about the facts to be found. And I believe that Judge Blackburn did his job as he generally does in making these extensive factual findings. And we'll say that it's clear, and these also credibility determinations go to the weight and inferences which must be afforded to plaintiffs, that Officer Dulaiev lied and said about Herd saying, I'm going to, quote, fuck you up, and that it was the number one reason, because he knew that his conduct was unconditional. You can't tase people that are peacefully surrendering. And so he tried to make him aggressive, and he was caught in that as part of the record. I'd like to add that, you know, particularly now as society vehemently debates police uses of force, I think courts should be disciplined in not second-guessing factual disputes, as this court repeatedly reiterates it shouldn't do under the guise of legal ones. The attempts to reframe these facts as legal ones is what litigants keep doing here. And it's clear that this evidence was carefully reviewed and determined that a reasonable jury could find in Herd's favor. And those findings do not amount remotely to visible fiction, and defendants should not be able to keep this case from a jury. And I just noticed that I think I'm out of time. Thank you, counsel. Ms. Lewis, you have rebuttal time. Yes, I do. Thank you, Your Honor. I want to address a few points raised by counsel. Number one is this finding in the order on the motion to dismiss that Mr. Herd was not rapidly advancing. That is blatantly contradicted by the video, which shows that it was only a two-second time period between when he exited the shrub on his feet, despite a command to stay down, and when he got to the officer. At that point, the officer was retreating, taking steps backwards, and the officer's options were either to use force or simply wait to see what was going to happen. Also, I wanted to address this issue of whether Officer Goliath, later on during the course of an internal investigation, lied about a comment that Mr. Herd made when he was behind the shrub. The comment is basically a threat that Officer Goliath had said he heard Mr. Herd make when he was behind the shrub, I'm going to mess you up, that type of thing. That is something that came out after the fact, and whether or not that issue... First of all, we've assumed that Mr. Herd never made that threat for purposes of summary judgment, because that fact goes in favor of the plaintiff if he never made a threat to the officer. Second of all, whether the officer later manufactured a story, which we strongly dispute, by the way, but it doesn't matter because that goes to the subjective state of mind, and really what we're looking at here in the law requires us to look at the objective reasonableness of the conduct. As far as the cases, I want to address the Emmett case because that was just submitted as supplemental authority last night. That case obviously was decided just this year, so it can't clearly establish any law, but importantly that is different from the case that we're dealing with because in the Emmett case, what happened was a man who was basically evaded an officer's commands to stop and come toward him. He was suspected of possibly involved in a fight. The fight had been well over for some time. It was at a wedding, and he ran away from the officer. The officer tackled him on the ground. Once the officer stands up and a full 10 seconds elapses, the man is alleged to be giggling on the ground, and the officer then tases him. At the same time, he says, I'm going to tase you. That is drastically different from what's going on here where we have this very time compression with a suspect who's still advancing on the officer, so that's very different. In addition, the Morris case is also very factually different. In that case, the man had his back to the officer. He wasn't a suspect in a crime at all, and those factors make it very different. I also want to go back to one question raised by Judge Matheson, which is, can we resolve the Fourth Amendment issue? Should we have resolved the Fourth Amendment issue in this case, and do we need to do that? I would submit that that is important to resolve in this case because in this what happens in a jury trial or not. To put that off until later down the road, it really would be the interest of efficiency and economy to have that issue decided now. Unless the court has other questions for me, I am going to stop. Further questions from the panel? All right. Thank you, Ms. Lewis. Thank you, Ms. Grossman. We appreciate counsel's arguments this morning. The case will be submitted, and counsel are excused. That concludes this morning's cases before this panel.